UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

October 29, 2020

LETTER TO COUNSEL:

> RE: *Sheila T. v. Andrew M. Saul, Commissioner of Social Security*
> Civil No. TJS-19-3547

Dear Counsel:

On December 13, 2019, Plaintiff Sheila T. petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits ("DIB"). ECF No. 1. The parties have filed cross-motions for summary judgment. ECF Nos. 17 & 19. These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] ECF No. 11. Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

In her application for DIB, Sheila T. alleged a disability onset date of December 13, 2020, which she later amended to March 19, 2015. (Tr. 17, 359, 393.) Her applications were denied initially and on reconsideration. *See* ECF No. 19-1 at 2. A hearing was held before an Administrative Law Judge ("ALJ") on January 4, 2017, and that ALJ determined that Sheila T. was not disabled. *Id.* The Appeals Council granted Sheila T.'s request for review of the ALJ's decision and the case was remanded for further proceedings. *Id.* On January 17, 2019, a second hearing was held before an ALJ. (Tr. 32-90.) In a written decision dated February 13, 2019, the ALJ found that Sheila T. was not disabled under the Social Security Act. (Tr. 17-25.) The Appeals Council denied Sheila T.'s request for review of the February 13, 2019 decision (Tr. 1-6), making that decision the final, reviewable decision of the agency.

The ALJ evaluated Sheila T.'s claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Sheila T. was not engaged in substantial gainful activity and had not been engaged in substantial gainful activity from March 19, 2015 through her date last insured of September 30, 2016. (Tr. 19.) At step two,

---

[1] This case was originally assigned to Judge Deborah L. Boardman. On September 9, 2020, it was reassigned to me.

the ALJ found that Sheila T. suffered from the following severe impairments: left wrist De Quervain's tenosynovitis, carpal tunnel syndrome, epicondylitis of the left elbow, and osteoarthritis in both knees. (Tr. 20.) At step three, the ALJ found Sheila T.'s impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). (Tr. 20.) The ALJ determined that Sheila T. retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except she could engage in frequent handling and fingering with the left, dominant, upper extremity. She could occasionally climb ramps or stairs, but never ladders, ropes or scaffolds. She could occasionally balance on uneven surfaces and occasionally stoop, kneel, crouch and crawl.

(Tr. 20.)

At step four, relying on the testimony of a vocational expert ("VE"), the ALJ determined that Sheila T. was capable of performing her past relevant work as a daycare provider. (Tr. 23.) Alternatively, at step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Sheila T. can perform, including cashier, sales attendant, and office helper. (Tr. 25.) Therefore, the ALJ found that Sheila T. was not disabled under the Social Security Act. (*Id.*)

Sheila T. raises two arguments in this appeal. First, she argues that the ALJ's RFC finding is not supported by substantial evidence. ECF No. 17-1 at 4-7. Second, she argues that the ALJ improperly classified her as a "younger individual" at step five of the sequential evaluation process. *Id.* at 7-8. Neither argument has merit.

Sheila T. argues that the ALJ's RFC determination is flawed for a number of reasons. First, she argues that because the ALJ determined that her impairments in her left, dominant, upper extremity were severe, the ALJ was required to find that she was unable to perform "frequent handling and fingering." ECF No. 17-1 at 5 (citing SSR 85-28). This is not the case and misstates the governing legal standard. At step two, in order to qualify as a severe impairment, an impairment only need be so severe that it could possibly be the basis of a finding of inability to engage in any substantial gainful activity. SSR 85–28, 1985 WL 56856 (1985). "Step two of the sequential evaluation is a threshold question with a de minimis severity requirement." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011). An ALJ's finding that an impairment is severe does not bind that ALJ to finding that the claimant is unable to perform any substantial gainful activity.

Second, she argues that the ALJ improperly failed to consider the reasons that she refused to comply with the treatment recommendations of her medical providers, including her religious beliefs. *Id.* at 6. An ALJ must "consider and address reasons for not pursuing treatment that are pertinent to an individual's case," including whether the individual's "religious beliefs . . . prohibit prescribed treatment." SSR 16-3p. During the administrative hearing, the ALJ asked Sheila T. how she treated her impairments. (Tr. 55.) Sheila T. responded that she applied ice to her knees and arms once or twice a day, meditated, and listened to a religious television program called The Word. (Tr. 55, 63) She stated that she "stopped taking medicine at all" in 2014 or 2015. (Tr. 55.)

2

The ALJ asked Sheila T. why she had failed to follow up with her doctors and why she did not comply with their treatment recommendations. (Tr. 56-57.) Sheila T. explained that she does "her own thing" and that she meditates. (Tr. 57.) She stated that she "just [doesn't] deal with doctors that much anymore," in part because her mother's death may have been caused by reactions to "different kinds of medicine." (Tr. 57-59.) When the ALJ asked why Sheila T. did not comply with treatment recommendations that did not include medicine, like obtaining an MRI and attending physical therapy, she explained that using ice and meditation was sufficient in light of her religious faith. (Tr. 59, 62.)

In the ALJ's written decision, the ALJ discussed Sheila T.'s noncompliance with her prescribed medications and treatment:

> [T]he claimant has done very little to address her impairments, which indicates that she is not in the level of pain she alleges. She ices, uses a brace and a splint, and watches a religious program. Especially given the advice by her primary care physician that she should engage in simple interventions, it is particularly noteworthy that she did not. While she testified that she believes her mother died from pharmaceutical interaction complications, some of the treatments offered would not have run afoul of her concerns, including single use medicines, injections, and physical therapy. While she attended physical therapy at one point, it was for approximately two appointments only. It is also noteworthy that, after the prior hearing 2016, the claimant had even less care. Further, after the date last insured, in August 2016, the claimant noted to her primary care doctor that she was having some success with the brace and icing, further casting doubt on the severity of the claimant's symptoms.

(Tr. 23.)

The ALJ's reasoning is sound and in line with SSR 16-3p. The ALJ properly considered the reasons for Sheila T.'s noncompliance with her prescribed medication and treatment, including her nonspecific religious reasons. The ALJ logically concluded that Sheila T.'s decision not to comply with prescribed treatment was inconsistent with her allegations of severe pain and impairment. As the ALJ pointed it, there was no reason (religious or otherwise) that Sheila T. was unable to comply with her treatment recommendations. She simply chose not to.[2]

Sheila T.'s third argument regarding the RFC determination is that the ALJ should not have concluded that she was capable of performing light work when she was (according to her argument) unable to perform even sedentary work. *Id.* at 7. But the ALJ properly concluded that Sheila T. could perform light work, as set forth in the RFC determination.

---

[2] The ALJ did not prevent Sheila T. from introducing evidence regarding her religious beliefs and the impact that these beliefs had on her treatment decisions. Rather, the ALJ stopped Sheila T.'s counsel from making an argument (or an inappropriate evidentiary proffer) at the wrong time. (Tr. 74-75.) In any event, the ALJ asked Sheila T. to clarify how her religious beliefs affected her treatment decisions on several occasions and Sheila T. declined to do so.

3

In assessing Sheila T.'s RFC, the ALJ credited the plaintiff's complaints about pain in her left hand but concluded that the resulting limitations were not disabling. (Tr. 21.) The ALJ noted that following Sheila T.'s dorsal compartment release procedure in September 2013, "her provider indicated that no further treatment was needed for carpal tunnel or tennis elbow, other than physical therapy." (*Id.*) But Sheila T. did not attend physical therapy until August 2014, nearly one year after her procedure. And even then, she stopped attending after two sessions. (*Id.*) In January 2016, Sheila T. sought treatment from her primary care physician, Dr. LoPresti, for pain in her left shoulder and upper extremity. Dr. LoPresti noted that she had not seen her orthopedist for over a year and "that she was using minimal medications and wished to discuss her disability claim." (Tr. 22.) In February 2016, Sheila T. was seen by an orthopedist and prescribed a wrist brace for carpal tunnel syndrome in her left wrist and an elbow strap for left elbow epicondylitis. (Tr. 22, 646-47.) In October 2016, Sheila T. refused steroid injections in her wrist, which were recommended by a treating physician. (Tr. 22, 759.) At this visit, Dr. LoPresti advised the plaintiff to comply with his treatment recommendation so that her mobility could be improved and "disability may not be needed." (Tr. 759.) She apparently told Dr. LoPresti that she "knows her body" and is "not a medicine person." (*Id.*) The medical evidence summarized by the ALJ demonstrates that Sheila T.'s conditions were treated conservatively and that she was noncompliant with her prescribed treatments. The ALJ also credited State agency opinions that limited Sheila to light work with no more than frequent handling due to tenosynovitis. (Tr. 22, 145-49, 155-59.) Because the ALJ found these opinions to be consistent with Sheila T.'s conservative treatment record and her "activities of daily living and little treatment and little care for her conditions," the ALJ properly assigned great weight to the opinions. (Tr. 22.)

The ALJ's RFC determination is supported by substantial evidence. Sheila T.'s argument to the contrary is essentially a request for the Court to reweigh the evidence of record and substitute its judgment for that of the ALJ. It would be improper to do so. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (brackets, citation, and internal quotation marks omitted). Here, the ALJ's decision is supported by substantial evidence and the Court will not disturb it.

Because the ALJ properly determined that Sheila T. was capable of performing past relevant work as a daycare provider, the Court declines to consider Sheila T.'s second argument regarding whether the ALJ's alternative finding at step five was erroneous.

For the reasons set forth herein, Sheila T.'s Motion for Summary Judgment (ECF No. 17) will be **DENIED**, and the Commissioner's Motion for Summary Judgment (ECF No. 19) will be **GRANTED**. The Clerk is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/
Timothy J. Sullivan
United States Magistrate Judge